ELIJAH HUNT, plaintiff in error, *v.* THE PEOPLE, defendants
in error.

Where, on the trial of an indictment for manslaughter, alleged to have been
committed in causing death by effecting an abortion, it was shown that the
defendant had said to A. A., who was on her way to see Mrs. L., then stated
to be pregnant, that he would effect an abortion upon Mrs. L. for $25, and it
appeared that A. A. went immediately to the residence of Mrs. L.; held,
that it was not erroneous to permit the prosecution to prove the fact that a
conversation on the subject took place between A. A. and Mrs. L., without
stating the details of the conversation, though the defendant was not present.
And inasmuch as it further appeared that Mrs. L. returned with A. A. imme-
diately to the place of defendant, where the defendant operated on Mrs. L.
and produced the abortion, and it appeared satisfactorily that the defendant
had intended that what he said should be communicated by A. A. to Mrs. L.,
though it was not authorized in express terms; held, further, that it would
have been competent to prove that A. A. communicated to Mrs. L. what the
defendant had said on the subject, and to give the details of such commu-
nication.  *Per* CLERKE, J.
A witness, called and examined on behalf of the defendant, having testified,
without objection from the district attorney, to a conversation she had with
the deceased Mrs. L. a day or two before her death, during which the
deceased informed the witness that her illness was caused by miscarriage,
and that the miscarriage had been brought about by natural causes; held,
that though such evidence would have been inadmissible if objected to, yet,
having been received, it was competent for the district attorney to meet it
by proof that the deceased was out of her mind when she made such decla-
rations.                                                                          *
The declarations of a party as to the state of his health are, under some cir-
cumstances, admissible in evidence in his own behalf, but they are confined
to his condition at the moment of speaking, and cannot be extended to past
matters.
Where, on the trial of an indictment, evidence had been improperly received
and excepted to, and it appeared that the jury was subsequently instructed
by the court in its charge to disregard such evidence, it was held that the
erroneous decision in receiving the evidence was no ground for reversing the
judgment.
Form of an indictment for manslaughter in the second degree, for causing
death by effecting an abortion, with a count for a misdemeanor in using an
instrument with intent to procure a miscarriage.

ERROR to the Court of General Sessions of New-York. The plaintiff in error was indicted in the Court of General Sessions for manslaughter in the second degree, under part four, chapter one, title two, article one, section nine of the Revised Statutes, with a count for a misdemeanor under section two, article nine, title three of the same chapter.

The indictment was in the following form:

*City and County of New-York, ss :*

The jurors of the people of the State of New-York, in and for the body of the city and county of New-York, upon their oath, present: That Elijah Hunt, late of the tenth ward of the city of New-York, in the county of New-York aforesaid, on the first day of January, in the year of our Lord one thousand eight hundred and fifty-seven, at the ward, city and county aforesaid, in and upon one Hannah Lawson, she, the said Hannah Lawson, being then and there pregnant with a quick child, feloniously and willfully did make an assault, and that he, the said Elijah Hunt, did then and there feloniously and willfully use on, in and upon the womb and body of the said Hannah Lawson, the mother of the said quick child, a certain instrument, to wit, a piece of steel wire, of the length of six inches, with the intent thereby to then and there destroy the fœtal life of the said quick child, and the same not being necessary to preserve the life of her, the said Hannah Lawson, the mother of the said quick child. And the jurors aforesaid, upon their oath aforesaid, do further present: That the said Hannah Lawson, by means of the said use of the said instrument, willfully and feloniously aforesaid, upon her womb, by the said Elijah Hunt, became mortally wounded and distempered, and of the said mortal wounding and distempering languished from the day first aforesaid until the twenty-first day of the same month aforesaid, in the same year aforesaid, when she, the said Hannah Lawson, of the said mortal wounding and distempering, died. And so the jurors aforesaid, upon their oath aforesaid, do

Hunt *v.* The People.

say that he, the said Elijah Hunt, willfully and feloniously, by the means and in the manner aforesaid, her, the said Hannah Lawson, on the day and in the year last aforesaid, did kill and slay, against the form of the statute in such case made and provided, and against the peace of the people and their dignity.

*Second count.*—And the jurors aforesaid, upon their oath aforesaid, do further present: That, on the day and in the year first aforesaid, he, the said Elijah Hunt, willfully and maliciously did use a certain instrument of steel wire of the length of six inches in and upon the womb of her, the said Hannah Lawson, at the ward, city and county aforesaid, she, the said Hannah Lawson, being then and there big and pregnant, within her said womb, with a child, with the intent thereby to cause the said child of her, the said Hannah, to be forcibly delivered from her said womb, before the natural time of delivery thereof, and to cause her, the said Hannah Lawson, thereupon to miscarry of the said child from the womb, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

A. OAKEY HALL,<br>
*District Attorney.*

The defendant pleaded not guilty, and the issue so joined came on to be tried, on the 22d day of April, 1857, before James M. Smith, Jr., Recorder, and a jury.

During the trial, *John Bigelow,* a physician, was called as a witness by the prosecution, duly sworn and testified: That he knew Mrs. Lawson, the deceased, in her lifetime; that he commenced attending her professionally on the 17th day of January, 1857, and that she died on the twentieth day of that month.

During his examination, as a witness, he was asked, by the district attorney, whether he, the witness, when he first

called to attend her professionally, as above stated, found any medicine with her?

The counsel for the prisoner objected to this question, on the ground that there was no evidence showing or tending to show any agency of the defendant in giving to the said Mrs. Lawson the medicine alluded to by the said question, or in procuring it to be given to her. The court overruled the objection and allowed the question to be answered, saying that it could not foresee what would be the testimony as to whether this was given to her by the defendant; to which said decision of the court the counsel for the prisoner excepted.

The witness thereupon testified: That upon that occasion he found with the said Mrs. Lawson medicine known as the oil of rue.

The district attorney thereupon asked the witness to state the effects of the medicine in reference to producing abortion; to which question the counsel for the defendant objected.

The court overruled the objection and allowed the question to be answered, to which decision the counsel for the defendant duly excepted.

The district attorney asked the witness to state what the bottle containing the medicine in question was marked.

The counsel for the defendant objected to this question. The court overruled the objection and allowed the question to be answered, to which decision the counsel for the defendant duly excepted.

There was not, during the trial, any evidence showing or tending to show that the defendant gave the medicine, oil of rue, or caused it to be given to her, and the court instructed the jury in its charge to disregard it.

During the trial, one Mrs. Ann Armitage was introduced as a witness on behalf of the prosecution, who testified: That she knew the defendant, Hunt; that his occupation was that of curl and wig maker; that he had in his employ,

at his place of business, 115 Bowery, one Ann Dalton; that she, the witness, about two weeks before the holidays, in December, 1856, called at defendant's said place of business; that she stated to Ann Dalton, in defendant, Hunt's, presence, that she was going to see a friend of hers who was in trouble; that Ann Dalton asked her what trouble, to which she replied that her friend was pregnant; that defendant, Hunt, then said that he would relieve her friend of her difficulty for $25.

The district attorney subsequently proposed to show by this witness, that she detailed this conversation to the deceased Mrs. Lawson; that, in consequence, Mrs. Lawson and the witness returned immediately to the place of defendant, and that defendant operated on the deceased with an iron wire, which was produced.

The counsel for the prisoner objected to the fact of the conversation between the deceased Mrs. Lawson and the witness, in the absence of the defendant, Hunt. The court overruled the objection, and allowed the fact of such conversation, but not its details, to be given; to which decision the counsel for the defendant excepted.

In the course of the trial the said *Ann Dalton* was called as a witness by the defence and duly sworn. Among other things, she testified, without objection by the district attorney, to a conversation she had with the deceased in January, and but a day or two before her death, during which the deceased informed this witness that her illness was caused by a miscarriage, and that the miscarriage had been brought about by natural causes. The witness stated that at the time of the conversation she was alone in the room with the deceased.

Subsequently, the witness *Dr. Bigelow* was recalled by the prosecution and stated that it was during one of his professional visits to deceased that the witness Ann Dalton saw her as above stated; that he, the witness, was out of the room at the time.

The district attorney asked the witness what, in his professional opinion, at this time, was the state of mind of the deceased?

The counsel for the defendant objected to the question; the court overruled the objection and allowed the question to be answered; to which decision the counsel for the defendant also excepted.

The witness then answered that the deceased at this time was out of her mind.

The jury found the defendant guilty of the felony charged, and he was sentenced to imprisonment in the state prison, at hard labor, for the term of four years; whereupon the cause was removed into the supreme court by writ of error. The cause was argued by

*Henry L. Clinton,* for the plaintiff in error.

*A. J. Vanderpoel,* for the people.

CLERKE, J.—The defendant was indicted at a Court of General Sessions, for effecting an abortion upon one Hannah Lawson, by which she became mortally wounded, and, in consequence, languished and died.

It was proved at the trial, by Ann Armitage, " that she went to defendant's place of business; that she stated to one Ann Dalton, in the defendant's presence, that she was going to see a friend of her's who was in trouble; that Dalton asked her what trouble, to which she replied that her friend was pregnant; that defendant Hunt then said that ' he would relieve her friend of her difficulty for twenty-five dollars.' " The district attorney subsequently proposed to show by this witness that she detailed the conversation to the deceased Mrs. Lawson; that, in consequence, Mrs. Lawson and the witness returned immediately to the place of defendant, and that defendant operated on the deceased with an iron wire, which was produced.

The counsel for the prisoner objected to the fact of the conversation between the deceased Mrs. Lawson and the witness, in the absence of the defendant Hunt. The court overruled the objection, and allowed the fact of such conversation, but not its details, to be given; to this decision the counsel for the prisoner objected.

If the judge meant that the witness should testify merely that a conversation had taken place between Lawson and the witness, we cannot see on what grounds the counsel could have presented even the color of an objection, except that, as the conversation between her and Hunt had been previously detailed, that the effect produced on the jury was the same as if she was allowed to repeat it, as she had afterwards communicated it to Mrs. Lawson. But, we are strongly inclined to think, even if the judge had allowed this, there would have been no error. The conversation referred to in the objection was merely a communication by the witness to Mrs. Lawson that Hunt said "that he would relieve her of her difficulty for twenty-five dollars." There is no proof, to be sure, that Hunt authorized the witness, in positive terms, to give this information to Mrs. Lawson; but he declared, in the presence of Mrs. Armitage, her friend, who was describing "her trouble," that he would relieve her for a certain compensation, and he certainly imposed no silence on Mrs. Armitage in relation to the subject, but, on the contrary, by the terms of the proposal itself, he must necessarily have designed that it should be conveyed to the person who was to accept or reject it.

But, although the conversation (if that can be called a conversation, which, in fact, was only the repetition of what the defendant had said) was perfectly admissible, yet it was, practically, of very little importance in the present case whether it was admitted or not. The offence was clearly proven, and could have been as clearly proved with or without any portion of the conversation first detailed or afterwards repeated. The same witness proved

that Mrs. Lawson "went to the place of defendant, and that defendant operated on the deceased with an iron wire," which was produced at the trial. This was, of itself, abundantly sufficient for the jury, without the necessity of referring to anything that had been previously said or done.

The next objection urged before us by defendant's counsel is, that Ann Dalton, who was called on behalf of the defendant, testified, without objection by the district attorney, to a conversation she had with the deceased a day or two before her death; during which the deceased informed her that her illness was caused by a miscarriage, and that the miscarriage had been brought on by natural causes. This was received for the benefit of the defendant as the declaration of the party alleged to have been injured; the district attorney not insisting upon the right to have it shown that at the time she made the declaration she thought she could not recover. He had a right to dispense with this if he had a right to insist upon it, and his dispensing with it was nothing more than a consent that the declaration should go to the jury for what it was worth, with the same effect as if it was shown that it was the declaration of a person conscious of approaching death. Had not the district attorney, on the other hand, the right to rebut the effect of this testimony, by showing the state of mind of the deceased at the time she made the declaration? The defendant's counsel insists that, although the declaration was introduced by himself, for the benefit of his client, still as it was error to receive the declaration of a third party, without showing that she believed she was dying, it is a double error to attempt any refutation of the declaration, and that the whole should be expunged. This was not collateral testimony; it was direct; it tended to show whether the operation produced the death of Mrs. Lawson, and it was one of the issues in the cause. Even if it were improper as hearsay testimony, without showing that the declarant believed that she was about to die, yet, as the district attor-

ney, by withholding his objection, recognized it as proper evidence, and as the defence introduced it as proper evidence, the verdict cannot be disturbed on the ground that the declaration was hearsay evidence, and although it went to the jury the disproof of it was not admissible. But it is very doubtful, even if the district attorney had objected to the declaration on the ground to which I have referred, whether the objection could have been sustained. The declaration did not relate to any previous occurrence to which Mrs. Lawson could testify as a witness at the trial; but she spoke of the state of her health and the nature of her distemper. The representations of deceased persons as to the state of their health, where relevant to the issue, have been frequently received, without proving that they were made under the belief of approaching death. (*Aveson* v. *Lord Kinnaird*, 6 *East*, 188, 198, 1 *Phil. Ev.*, 233.) The judges held the evidence unexceptionable on general principles, as the account of the deceased person concerning her existing state of health, which was the subject of inquiry. So, inquiries by medical men, with the answers to those inquiries, are evidence of the state of health of the patient at the time. What a man has said of himself to his surgeon is evidence in an action of assault and battery to show what he has suffered in consequence of the assault. In an action for breach of warranty of the soundness of a slave, his declarations, that he had a pain in his side, by which the disease was detected, were held to be admissible. ( *Grey* v. *Young*, 4 *McCord*, 38.) These and several other cases which could be quoted, stand on the doctrine of *res gestæ*. In fact, it is an elementary principle in the law of evidence that the representations of a sick person, of the nature, symptoms and effects of the malady under which he is laboring at the time, are received as original evidence. They are not comprised within the definition of hearsay evidence. (1 *Greenl. Ev.*, § 102.)

The judgment of the General Sessions should be affirmed.

PEABODY, J.—I do not know that I should agree with my learned brother that the statement of deceased was admissible as evidence, if it had been objected to. I think that I should not, but should consider it inadmissible. The statements of persons as to their feelings or health are, as is shown by the cases cited by him, often admitted as evidence to show the state of health at the time of speaking, many of the symptoms and *indicia* of which can only be ascertained by communication from the patient. Such, for instance, are the sensations at the moment of the inquiry, as a pain of a peculiar kind, or in one or another part of the sufferer, as to which the statements of the party, like his actions and movements in reference to it, are deemed to be somewhat involuntary, and therefore truthful, and for this reason, as well as from the necessity of the case, are admitted as evidence of the facts stated. But it is only as to the then present state of the party or his feelings that that kind of evidence is admissible. In this case the deceased undertook to state a fact occurring sometime before, and that not even a matter of her own personal experience which would in its own nature necessarily be known only to herself, but to tell what, occurring at a previous time, had produced the then present state of her health; and, as to this matter, I think that her declarations were not admissible on any ground, unless made *in extremis,* which this was not.

I concur with him, however, in the result to which he has arrived.

MITCHELL, J.—I am of opinion that when one party has introduced improper evidence, the court may allow his opponent to meet it, either by contrary or explanatory proof, or other matter of fact, or by denying its legality; especially if the party who introduced the proof does not withdraw it. The members of the court do not disagree as to the rule of law governing the admission of declarations of a party as to the state of his health : that they are confined to his condi-

tion at the moment of speaking, and cannot be extended to past matters. As to the former, they are presumed to be necessarily without design, and as truthful as the involuntary motion of the hand to the aching head or the painful side, or the gentle sigh, the heavy groan or the falling tear. The exclamation of the Shunamite boy (*a*), when, overcome with the heat in the harvest field, he said to his father, "My head, my head," and was carried home and died, was as satisfactory evidence of his suffering as his own testimony in court would have been.

Judgment affirmed.

